UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

INVISION DEVELOPMENT GROUP,
LLC,

         Plaintiff,

   v.

CONTINENTAL CASUALTY COMPANY,

         Defendant.

---

1:21-cv-5814-NLH-EAP


**OPINION**

**APPEARANCES**:

ROBERT WINFIELD WILLIAMS
ASHLEY SOBLE NECHEMIA
MATTLEMAN, WEINROTH & MILLER, P.C.
401 ROUTE 70 EAST
SUITE 100
CHERRY HILL, NJ 08034

    *Counsel on behalf of Plaintiff*

KEVIN F. BUCKLEY
CRAIG R. RYGEIL
KATHARINE ANNE LECHLEITNER
MOUNG COTTON WOLLAN & GREENGRASS LLP
30A VREEDLAND ROAD
SUITE 210
FLORHAM PARK, NJ 07932

    *Counsel on behalf of Defendant*

**HILLMAN**, **District Judge**

    This matter comes before the Court upon the Motion to

Dismiss [Docket Number 7], filed by Defendant Continental

Casualty Company ("CCC"), pursuant to Rule 12(b)(6) for failure

to state a claim upon which relief can be granted.  Also before

the Court is Plaintiff Invision Development Group, LLC's ("IDG") Cross-Motion to Stay [Dkt. No. 13].  Plaintiff opposes CCC's motion, and Defendant opposes IDG's motion to stay.

The Court has considered the parties' submissions and decides these matters pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  For the reasons stated below, Defendant's motion to dismiss will be granted and Plaintiff's motion to stay will be denied.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

This action is one for property insurance coverage for alleged business income losses arising out of the COVID-19 pandemic.

**A.   Background and the Insurance Policy at Issue**

IDG operates Ideal Imagine Laser Hair Removal, a personal service company offering laser hair removal and located at 1233 Churchmans Road, Suite B, Newark, Delaware 19713 (the "Property" or the "Premises").  IDG purchased an Insurance Policy numbered B 4017399161 (the "Policy") from CCC for "Invision Development Group LLC" and additional insured "Ideal Image Development" for one location and one building at the Churchmans Road address. CCC's Brief in Support of the Motion to Dismiss ("CCC Br.") [Dkt. No. 7-9], at 3.  The Policy was effective April 18, 2019 through April 19, 2020.  IDG's Brief in Opposition to the Motion to Dismiss and In Support of IDG's Cross-Motion to Stay ("IDG

2

Br.") [Dkt. No. 12-3], at 2.  The Policy covers the Building and the Business Personal Property, which includes the physical building as well as Plaintiff's property used in its business, its stock, and certain other property located in or on the buildings.  CCC Br. at 3.  The Policy contains a "Businessowners Special Property Coverage Form," which states that coverage is provided "for *direct physical loss of or damage to Covered Property at the premises* described in the Declarations caused by or resulting from a Covered Cause of Loss."  The Policy called "Exhibit A" ("Exhibit A") [Dkt. No. 7-2], at 20-41 of 164, also specifically called Form SB-146801-I (Ed. 4-14).

The parties agree that, among other things, the Policy provides coverage for "Business Income and Extra Expense,"[1] stating, in relevant parts:

> Business Income and Extra Expense is
> provided at the premises described in the
> Declarations when the Declarations show that
> you have coverage for Business Income and
> Extra Expense.

> **1. Business Income**

> a. Business Income means:

> ***

> b. We will pay for the actual loss of Business

---

[1] There is also a provision entitled "Business Income and Extra Expense – Dependent Property," but the parties' briefs make clear the key section at bar is the "Business Income and Extra Expense" provision.  In fact, Plaintiff's brief makes no mention of the "Dependent Property" provision.

Income sustain [sic] due to the necessary "suspension" of your "operations" during the "period of restoration."  The "suspension" **must be caused by direct physical loss of or damage to property at the described premises.**  The loss or damage caused by or result from a Covered Cause of Loss ....

c. Your loss of Business Income is covered up to 30 consecutive days **when caused as a direct result of damage, by a covered Cause of Loss, to property** adjacent to your premises.

\* \* \*

**2. Extra Expense**

a. Extra Expense means reasonable and necessary expenses you incur during the "period of restoration" that **you would not have incurred if there had been no direct physical loss of or damage to property** caused by or resulting from a Covered Cause of Loss.

b. We will pay Extra Expense (other than the expense to repair or replace property) to:

(1) Avoid or minimize the "suspension" of business and to continue "operations" at the described premises or at replacement premises or temporary locations, including relocation expenses and costs to equip and operate the replacement premises or temporary locations; or

(2) Minimize the "suspension" of business if you cannot continue "operations."

Exhibit A, at 42-44 of 164, also specifically called Form SB 146802E (Ed. 6-16) (emphasis added).  To further appreciate the Policy's coverage, the Policy contains a number of other key provisions, for example, the "period of restoration" is defined,

in part, as the period of time that:

>    (a) Begins with the date of **direct physical loss or damage** caused by or resulting from any Covered Cause of Loss at the described premises; and
>
>    (b) Ends on the earlier of:
>
>> (1) The date when the property at the described premises should be **repaired, rebuilt or replaced** with reasonable speed and similar quality; or
>>
>> (2) The date when business is resumed at a new permanent location.

Id. at 37-38 of 164, also specifically called Form SB-146801-I

(Ed. 04-14) (emphasis added).  The Policy also contains an

endorsement titled "Civil Authority," which provides, in

pertinent part, that:

>    When the Declarations show that you have coverage for Business Income and Extra Expense, you may extend that insurance to apply to the actual loss of Business Income you sustain and reasonable and necessary Extra Expense you incur **caused by action of civil authority that prohibits access to the described premises.  The civil authority action must be due to direct physical loss of or damage to property at locations, other than described premises**, caused by or resulting from a Covered Cause of Loss.

Id. at 68 of 164, also specifically called Form SB-146826-B (Ed.

08/08) (emphasis added).  In addition, the Policy includes an

endorsement titled "Expediting Expenses," which provides, in

pertinent part, as follows:

>    In the event of **direct physical loss of or**

5

> **damage to Covered Property** caused by or
> resulting from a Covered Cause of Loss, we
> will pay for the reasonable and necessary
> additional expenses you incur to make
> **temporary repairs, expedite permanent
> repairs, or expedite permanent replacement,
> at the premises sustaining loss or damage.**

Id. at 51 of 164, also specifically called Form SB-146808-A (Ed. 01/06) (emphasis added).

In accordance with aforementioned provisions, coverage is afforded under the Policy when Plaintiff establishes a loss satisfying the Policy's direct physical loss or damage prerequisites. Nonetheless, even if Plaintiff satisfied the prerequisites, coverage may still be denied if the loss or damage is not caused by or resulting from a Covered Cause of Loss, which is defined in the Policy as "risks of direct physical loss." Id. at 21 of 164, also specifically called Form SB-146801-I (Ed. 4-14).

Among other things, a "Covered Cause of Loss" does not include perils that are excluded from overage, including "Consequential Loss," which is defined as "Delay, loss of use or loss of market." Id. at 25 of 164, also specifically called Form SB-146801-I (Ed. 4-14). In short, all relevant provisions for Policy coverage require Plaintiff to suffer a direct physical loss of or damage to the property.

**B.   COVID-19 and the Ensuing Litigation in this Matter**

On March 22, 2020, in response to the emerging COVID-19

6

pandemic, the Governor of Delaware, John Carney, ordered all
non-essential businesses in Delaware to close until after May
15, 2020.  Complaint [Dkt. No. 1-1], at ¶¶16-18; see also
Governor Carney's Fourth Modification of the Declaration of a
State of Emergency for the State of Delaware Due to a Public
Health Threat attached as Exhibit B ("Exhibit B") [Dkt. No. 7-
3].  In a subsequent order, Governor Carney ordered all
individuals to shelter in place, prohibited certain travel, and
required individuals to maintain at least six feet of social
distancing from other individuals.  CCC Br. at 9-10.

        From this, Plaintiff alleges that "[a]s a result of the
above-referenced Governmental Actions, Invision suffered a
direct physical loss of and damage to its property because it
has been unable to use its property for its intended purpose,"
and "[a]s a result of the Governmental Actions, Invision was
required to close its laser hair removal center."  Complaint
[Dkt. No. 1-1], at ¶¶20-21.  On or about April 30, 2020, IDG
avers it submitted a claim to CCC for coverage under the policy.
Id. at ¶22.  On or about July 28, 2020, Plaintiff claims CCC
denied IDG's request for coverage.  Id. at ¶23.

        On November 20, 2020, Plaintiff filed the underlying
Complaint to this matter in the Law Division of the Superior
Court of New Jersey, Gloucester County.  Notice of Removal [Dkt.
No. 1], at ¶1.  The Complaint [Dkt. No. 1-1] asserts two counts:

7

(I) Breach of Contract, and (II) Declaratory Judgment.  In short, Plaintiff sought both monetary and declaratory relief, claiming entitlement to insurance coverage for alleged business income losses arising out of the COVID-19 pandemic.  Notice of Removal [Dkt. No. 1], at ¶2.

On March 18, 2021, the case was removed to this Court pursuant to 28 U.S.C. § 1441.  On April 8, 2021, Defendant filed the instant motion to dismiss, to which, on April 26, 2021, Plaintiff filed its opposition and cross-motion to stay.  Defendant filed its reply on June 1, 2021.  The parties' motions are therefore ripe for adjudication.

## DISCUSSION

### A.    Subject Matter Jurisdiction

This Court exercises subject matter jurisdiction over this matter pursuant to 23 U.S.C. § 1332 because there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.  See Notice of Removal, [Dkt. No. 1], at ¶¶3-12.

### B.    Standard of Review

Defendant's motion to dismiss is governed by Fed. R. Civ. P. 12(b)(6).  When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, a court must accept all well-pleaded allegations as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled

that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009) (alterations,

9

quotations, and other citations omitted).

"[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder."  Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)).  Thus, a court asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Id. (quoting Scheuer, 416 U.S. at 236).

"A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'"  Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570); see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provide[d] the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a [party] has acted unlawfully."  Iqbal, 556 U.S. at 678.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  It is

10

ultimately the defendant, however, that bears the burden of showing that no claim has been presented.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.[2]  Fed. R. Civ. P. 12(b).

**C.   Analysis**

As stated above, the Complaint alleges a claim for breach

---

[2] Here, since the Policy is an undisputedly authentic document that is the basis of Plaintiff's claims the Court may consider it as an exhibit to the motion to dismiss.  See Pension Benefit Guar. Corp., 998 F.2d at 1196.  Likewise, the Court may consider the Governor of Delaware's Orders as these documents are matters of public record that the Court can take judicial notice of. Furthermore, no party objects to these documents being presented to the Court in consideration of the instant motions.

of contract of the Policy and for declaratory judgment that
Plaintiff is entitled to coverage under the Policy.

This matter comes in succession with similar cases that
have called this Court to consider breach of contract claims
based on denial of insurance coverage for COVID-19 shutdown
related losses.  See, e.g., Delaware Valley Plumbing Supply,
Inc. v. Merchants Mutual Ins. Co., 519 F. Supp. 3d 178 (D.N.J.
2021); ABC Children's Dentistry, LLC v. Hartford Ins. Co., No.
20-10044, 2021 WL 4272767 (D.N.J. Sept. 21, 2021); Z Business
Prototypes LLC v. Twin City Fire Ins. Co., No. 20-10075, 2021 WL
3486897 (D.N.J. Aug. 9, 2021); Arrowhead Health & Racquet Club,
LLC v. Twin City Fire Ins. Co., No. 20-8968, 2021 WL 2525739
(D.N.J. June 21, 2021).  However, unlike the instant matter,
those cases all turned on the question of whether the virus
exclusion in the parties' contract applied and barred coverage.

Here, the Court is now called to answer a different
question, namely whether the Governor's order closing all non-
essential businesses triggers the Policy's expressed coverage
for "direct physical loss of or damage to" Plaintiff's property.
Instructively, there is a significant body of case law on this
very point.  See, e.g., Big Red Mgmt. Corp. v. Zurich Am. Ins.
Co., No. 20-2113 (KSM), 2022 WL 79623, ---F. Supp. 3d--- (E.D.
Pa. Jan. 7, 2022); Spring House Tavern, Inc. v. Am. Fire and
Cas. Co., 544 F. Supp. 3d 517 (E.D. Pa. June 16, 2021);

12

Children's Place, Inc. v. Zurich Am. Ins. Co., No. 20-7980, 2021
WL 4237284 (ES/CLW) (D.N.J. Sept. 17, 2021); Arash Emami M.D.,
P.C., Inc. v. CAN and Transp. Ins. Co., No. 20-18792 (LDW), 2021
WL 1137997 (D.N.J. Mar. 11, 2021); AC Ocean Walk, LLC v. Am.
Guar. & Liab. Ins. Co., 2022 WL 2254864, ---A.3d--- (N.J. Super.
App. Div. June 23, 2022); Rockleigh Country Club, LLC v.
Hartford Ins. Grp., 2022 WL 2204374, ---A.3d--- (N.J. Super.
App. Div. June 21, 2022); MAC Prop. Grp. LLC v. Selective Fire &
Cas. Ins. Co., 2022 WL 2196396, ---A.3d--- (N.J. Super. App.
Div. June 20, 2022).  Substantially for the reasons discussed
below and for the reasons the aforementioned courts found no
"direct physical loss of or damage to property" to trigger
insurance policy coverage, this Court reaches the same result
here.

     Both parties appear to agree that New Jersey law applies
here.  Under New Jersey law, the interpretation of an insurance
policy is a "question of law."  Selective Ins. Co. of Am. v.
Hudson E. Pain Mgmt. Osteopathic Med., 210 N.J. 597, 46 A.3d
1272, 1276 (N.J. 2012).  The language of an insurance policy
"should be interpreted according to its plain and ordinary
meaning."  Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165,
607 A.2d 1255, 1260 (1992).  Where the terms of the policy are
ambiguous and there is doubt regarding the existence of
coverage, the ambiguity is ordinarily resolved in favor of the

insured.  See Benjamin Moore & Co. v. Aetna Cas. & Sur. Co., 179
N.J. 87, 843 A.2d 1094, 1103 (2004).  However, where the
language of the policy is clear and unambiguous, "the court is
bound to enforce the policy as it is written."  Royal Ins. Co.
v. Rutgers Cas. Ins. Co., 271 N.J. Super. 409, 638 A.2d 924, 927
(App. Div. 1994).  The court "should not write for the insured a
better policy of insurance than the one purchased."  Buczek v.
Continental Cas. Ins. Co., 378 F.3d 284, 288 (3d Cir. 2004)
(citing Vassiliu v. Daimler Chrysler Corp., 178 N.J. 286, 839
A.2d 863, 867 (2004)).

Defendant argues the Complaint must be dismissed for
failure to allege any "direct physical loss or damage to" the
Property – a threshold coverage requirement under the Policy.
Defendant argues, as the Complaint plainly states, Plaintiff's
claims are predicated upon Policy coverage for (1) Action of
Civil Authority, (2) Business Income and Extra Expense, and (3)
Expediting Expenses.  Complaint [Dkt. No. 1-1] at ¶¶26-29.  Each
of these coverage provisions expressly requires "direct physical
loss of and damage to" the Property to trigger coverage.
Defendant argues that such a loss or damage is neither presented
nor plausibly pled making the Complaint fatally flawed.
Plaintiff counters it suffered a coverage loss or damage to the
Property by virtue of the Governor's Orders closing the
business, thus causing the business to be unusable for its

14

intended purpose.

The Court agrees with Defendant's argument.  The record
fails to present the requisite "direct loss of or damage to" the
Property to invoke any of the Policy's coverage provisions as
alleged in the Complaint.  In making this determination, the
Court is guided by (1) the Third Circuit's consideration of what
constitutes a physical loss, (2) other federal courts' rulings
on this exact issue, finding that closure from a COVID-19
government order does not constitute a physical loss or damage
to property to afford insurance coverage, and (3) New Jersey's
appellate courts' rulings on this exact issue, finding that
closure from a COVID-19 government order does not constitute a
physical loss or damage to property to afford insurance
coverage.

While not in the context of a COVID-19 closure order, and
addressing a case arising under Pennsylvania law, the Third
Circuit directly assessed whether "loss of use may constitute a
physical loss" to trigger insurance coverage in Motorists Mutual
Insurance Company v. Hardinger, 131 F. App'x 823, 826 (3d Cir
2005).  That case addressed whether alleged losses caused by
contamination of a well with e-coli bacteria were covered by an
insurance policy.  Instructively, the Third Circuit found that
"physical loss" required actual, tangible damage or loss to the
property, such that "where sources unnoticeable to the naked eye

have allegedly reduced the use of the property to a substantial degree," coverage would be available if "the functionality of the property was nearly eliminated or destroyed, or [if] their property was made useless or uninhabitable." Id. at 824-27.  In reaching this conclusion, the Third Circuit relied on its earlier ruling in Port Auth. of N.Y. & N.J. v. Affiliated FM Ins. Co., 311 F.3d 226 (3d Cir. 2002), which considered whether a similar policy that insured against "physical loss or damage" applied, finding that "if asbestos is present in components of a structure, but is not in such form or quality as to make the building unusable, the owner has not suffered a loss.  The structure continues to function – it has not lost its utility." Id. at 236.

Accordingly, for a loss of or damage to property to trigger insurance coverage under the Third Circuit's definition, there must be some tangible, physical element inherent to the property that has impacted the property's ability to function.  If the structure itself is unchanged, then the property has not lost its utility and coverage must be denied for an alleged loss of or damage to the property.  Here, as Plaintiff does not allege any change to the structure of the Property that in any way effected the Property's functionality, there is no coverage triggering loss of or damage to the Property.  For example, a factory that is closed on a Sunday and open on a Monday has the

same functionality whether it is closed or open.  Yet a factory that suffers a fire that destroys the machinery necessary for production loses functionality and would thus be entitled to coverage for a loss of or damage to the Property.  In short, just because the government ordered Plaintiff's business to temporarily close, does not mean the Property lost its functionality.  Thus, Third Circuit law supports the conclusion that the loss of use of the Property due to the Delaware Governor's closure orders did not result in loss of or damage to the Property.

Moving beyond the Third Circuit, courts in this district and within this circuit have repeatedly held that governments' COVID-19 closure orders do not cause loss of or damage to property to afford plaintiffs insurance coverage.  In Arash Emami, M.D., P.C., Inc., another court in this district held that the government's closure of non-essential businesses and services to combat the spread of COVID-19 did not cause "direct physical loss of or damage to property to trigger coverage." Id. 2021 WL 1137997, at *2.  Specifically, the district court concluded:

> The Policy unambiguously limits coverage to physical loss or damage to Plaintiff's commercial property.  Each of the coverage provisions Plaintiff relies on specifically requires "direct physical loss of or damage to property" to trigger coverage.  Here, Plaintiff has not alleged any facts that

17

> support a showing that its properties were
> physically damaged.  Instead, Plaintiff
> pleads that the Orders limited access to its
> facility and restricted Plaintiff's ability
> to provide medical care which caused
> Plaintiff to lose income and incur expenses.
> This is not enough.

Ibid. (citing MAC Prop. Grp., LLC, 2022 WL 2196396, at **5-7.

In furtherance of this ruling, the district court cited to

sixteen cases with identical rulings from district courts

throughout the country.  Id. 2021 WL 1137997, at *2 n.6.

Similarly, in Children's Place, Inc., 2021 WL 4237284, at **4-5,

a court in this district held the COVID-19 closure orders did

not result in any "direct physical loss of and/or damage to [the

plaintiff]'s property," finding:

> [W]hile the COVID-19 pandemic understandably
> impacted [the plaintiff]'s business, [the
> plaintiff]'s purported loss of use [of the
> property] is untethered from physical
> property loss or damage.  Because [the
> plaintiff]'s alleged losses are not causally
> connected to the physical condition of its
> stores, [the plaintiff]'s claim for
> insurance coverage falls outside the
> Policy's scope.  This conclusion is
> consistent with other courts in our Circuit
> and throughout the country that have
> interpreted insurance contracts in analogous
> COVID-19-related disputes, including other
> cases lodged against [this defendant].

Ibid.  Accordingly, courts in this district have uniformly

rejected Plaintiff's argument that a COVID-19 closure order

triggers insurance policy coverage for direct physical loss of

or damage to property.[3]

In addition, beyond this district, courts within this circuit have consistently made identical rulings.  In Big Red Mgmt. Corp., the district court for the Eastern District of Pennsylvania held that the state's COVID-19 closure orders did not cause the plaintiff "direct physical loss of or damage to property" that would entitle the plaintiff to business income loss coverage.  2022 WL 79623, at *5.  There, the district court ruled in line with the Third Circuit, holding that "'[d]irect physical loss' occurs when the insured structure 'has been rendered uninhabitable and unusable'; however, 'when the structure continues to function, there is no physical loss that would be eligible for coverage.'"  Ibid. (quoting Landsdale 329 Prop., LLC v. Hartford Underwriters Ins. Co., 0537 F. Supp. 3d 780, 781 (E.D. Pa. 2021) (quoting Port Auth. of N.Y. & N.J., 311 F.3d at 235)).  The district court also held that "'direct physical damage' occurs when there is 'a distinct, demonstrable, physical alteration of the property.'" Big Red Mgmt. Corp., 2022 WL 79623, at *5 (citation omitted).

Likewise, in Spring House Tavern, Inc., 544 F. Supp. 3d at 523-526, another district court for the Eastern District of

---

[3] The Court is unaware of any rulings from this district that hold closure from a COVID-19 government order could cause direct physical loss of or damage to a property; and Plaintiff does not cite to any authorities from this district that have so held.

Pennsylvania held that a COVID-19 closure order did not cause a direct physical loss of or damage to property.  In fact, the plaintiff in that case presented identical arguments as IDG does here, claiming that the terms "direct physical loss of" and "damage to property" are ambiguous and must be interpreted with the reasonable expectations of the insured.  Ibid.  This Court adopts the same analysis and conclusion, finding that based on "the relevant decision in this Circuit, ... Plaintiff's proffered interpretation of the phrase 'direct physical loss of or damage to property' to include the loss of use of the property is not a reasonable alternative interpretation."  Id. 544 F. Supp. 3d at 525.  In short, district courts within this district and circuit have clearly and uniformly ruled that closure as a result of a COVID-19 order is not enough to demonstrate direct physical loss of or damage to property to afford a plaintiff insurance coverage.  This Court agrees and will rule in line with the numerous courts before it.

Moreover, New Jersey's appellate courts have reached the same conclusion.  See, e.g., AC Ocean Walk, LLC, 2022 WL 2254864, at **7-13; Rockleigh Country Club, LLC, 2022 WL 2204374, at **2-5; MAC Prop. Grp. LLC, 2022 WL 2196396, at **5-11.[4]  Among the Appellate Division's recent decisions considering

---

[4] Plaintiff cites to a few outlier, unpublished cases from New Jersey's Superior Court and from various state and federal

this issue is MAC Prop. Grp. LLC, one of the matters Plaintiff
cited seeking a stay pending a ruling, making the case
particularly instructive.  As in the instant case, the policy at
issue in MAC Prop. Grp. LLC "obligated defendants to 'pay for
direct physical loss of or damage to Covered Property at the
premises described in the Declarations caused by or resulting
from any Covered Cause of Loss,' as well as 'pay for the actual
loss of Business Income [plaintiffs] sustained due to the
necessary 'suspension' of [plaintiffs'] 'operations' during the
'period of restoration.'"  Id. 2022 WL 2196396, at *5.  Just as
Plaintiff here argues, Plaintiffs in MAC Prop. Grp. LLC claimed
the term "direct physical loss of or damage to" in the policy is
ambiguous, and both sets of Plaintiffs cited to Wakenfern Food
Corp. v. Liberty Mut. Fire Ins. Co., 406 N.J. Super 524, 540,
968 A.2d 724 (App. Div. 2009) to support their claims of
ambiguity.  Id. at *6.

However, this Court, like the Appellate Division in MAC
Prop. Grp. LLC, finds such an argument unavailing, as "[t]he
term was not so confusing that average policyholders like
plaintiffs could not understand that coverage extended only to
instances where the insured property has suffered a detrimental

---

courts outside this circuit, none of which present binding,
persuasive authority.  In contrast, the cited Appellate
Divisions rulings hold contrary to Plaintiff's trial court
opinions, thus overruling those opinions.

physical alteration of some kind, or there was a physical loss

of the insured property." <u>Ibid</u>.  This Court is likewise

persuaded by the presence of the term "period of restoration" as

it appears in both cases.  As the Appellate Division held,

"[f]inding coverage where there has been no physical damage to

property that would require repairs, rebuilding, or replacement

would render the "period of restoration" language in the

contracts "meaningless." <u>Ibid</u>. (citation omitted).  In short,

the Court agrees with the <u>MAC Prop. Grp. LLC</u> holding and adopts

its reasoning in full, which is in line with the vast majority

of courts:

> Unsurprisingly, given the devasting impact
> of COVID-19 and state governments' efforts
> to curb the pandemic, there have been scores
> of federal and state appellate-level courts
> that have addressed the same issues raised
> in this appeal. The overwhelming majority of
> them have granted defendant insurers'
> motions to dismiss complaints seeking
> insurance coverage for business losses due
> to government orders barring or curtailing
> their operations in an effort to curb the
> COVID-19 pandemic because the losses were
> not due to physical loss or damage to their
> insured premises.

<u>MAC Prop. Grp. LLC</u>, 2022 WL 2196396, at *9.

Accordingly, upon this record, the Court agrees with

Defendant that the claims must be dismissed with prejudice.

Although Plaintiff argues it should be granted leave to amend,

as leave to amend should be freely given, <u>see</u> <u>Foman v. Davis</u>,

371 U.S. 178, 182 (1962), it is also true that "[l]eave to amend may be denied ... if amendment would be futile." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).  Here, the Policy is clear and under its plain and unambiguous terms Plaintiff's alleged losses as a result of COVID-19 are not covered.  The Court will not rewrite the policy so as to grant the Plaintiff a better contract than the one it bought.  Because an amendment, therefore, would be futile, the Court will dismiss the claims with prejudice.[5]

## CONCLUSION

For the foregoing reasons, Defendant's Rule 12(b)(6) motion will be granted, and Plaintiff's motion to stay will be denied. An appropriate Order will follow.


                                            s/ Noel L. Hillman
At Camden, New Jersey                       NOEL L. HILLMAN, U.S.D.J.


---

[5] Having found that dismissal is appropriate, the Court will dismiss the motion for a stay as moot noting also that this ruling comes after the Appellate Division's ruling in MAC Prop. Grp. LLC., one of the cases, as noted above, relied upon for such relief.